1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

BRAD N. MANSKER,

11

Plaintiff,

12

v.

13

FARMERS INSURANCE
COMPANY OF WASHINGTON, et

14

al.,

15

Defendants.

CASE NO. C10-0511JLR

ORDER ON MOTION FOR
SUMMARY JUDGMENT

AND

ORDER ON CROSS-MOTION
FOR SUMMARY JUDGMENT

16

## I.   INTRODUCTION

17

       This matter comes before the court on Defendants Farmers Insurance Company of

18

Washington ("FICO WA") and Farmers Insurance Exchange's ("FIE") motion for

19

summary judgment (Dkt. # 31) and Plaintiff Brad N. Mansker's cross-motion for partial

20

summary judgment (Dkt. # 56).  These motions address the question of whether Mr.

21

Mansker is entitled to recover under his underinsured motorist coverage for diminished

22

value loss sustained by his vehicle following a collision and repairs.  Having considered

1 the motions, as well as all submissions filed in support and opposition, and deeming oral

2 argument unnecessary, the court GRANTS in part and DENIES in part Defendants'

3 motion (Dkt. # 31) and GRANTS in part and DENIES in part Mr. Mansker's cross-

4 motion (Dkt. # 56).

5         **II. BACKGROUND**

6   Mr. Mansker, on behalf of himself and as a putative class representative, brings

7 suit against FICO WA and other Farmers entities[1] in connection with the alleged

8 diminished value loss sustained by his vehicle following a collision and subsequent

9 repairs.  (Compl. (Dkt. # 1) ¶¶ 1.1-1.4.)  Defendants provide automobile insurance

10 policies in Washington, as well as throughout the United States, which include

11 underinsured and uninsured motorists coverage ("UIM coverage").  (*Id*. ¶ 1.2.)  Mr.

12 Mansker contends that Defendants failed to honor the UIM coverage contained in

13 Farmers insurance policies.  Specifically, he alleges that Defendants neither informed

14 policyholders of their right to recover for diminished value loss, nor paid policyholders

15 for diminished value loss.

16   Mr. Mansker purchased his automobile insurance from FICO WA, and opted to

17 obtain UIM coverage both for bodily injury and property damage.  His policy covered the

18

19

20    [1] In his complaint, Mr. Mansker generally refers only to "FARMERS," which encompasses Defendants FICO WA, FIE, Farmers Insurance Company, Inc., Illinois Farmers Insurance Company, Inc., Farmers New Century Insurance Company, Farmers Insurance Company of Arizona, Farmers Insurance Company of Columbus, Inc., Farmers Insurance Company of Oregon, Farmers Texas County Mutual Insurance Company, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance, and Does I-XX.  Mr. Mansker does not distinguish the actions of particular Defendants.

period beginning October 28, 2006, and ending April 28, 2007. (2d Jordan Decl. (Dkt. # 32) ¶ 3 & Ex. A (FICO WA Policy No. 79-15837-82-67) ("Mansker Policy").) With respect to UIM coverage for property damage, Endorsement E1134 of the Mansker Policy:

> ENDORSEMENT ADDING PROPERTY DAMAGE TO UNDERINSURED MOTORIST COVERAGE
>
> For an additional premium, Underinsured Motorist Coverage is amended to include the following:
>
> We will pay damages for property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The property damage must be caused by accident and arise out of the ownership, maintenance, or use of the underinsured motor vehicle.
>
> As used in this endorsement, property damage means physical injury or destruction of: 1) your insured car or 2) property contained in your insured car which is owned by an insured person.

(Mansker Policy at 22.)

The underlying facts of this case are not disputed. On February 24, 2007, Mr. Mansker's 2006 Honda Ridgeline was damaged in a collision with an uninsured motorist. (Compl. ¶ 4.1.) Mr. Mansker notified FICO WA and presented his automobile for a determination of loss. (*Id.* ¶ 4.3.) FICO WA determined that repairs were appropriate and paid $7,052.83 for repairs, which was the cost of repairs less a $100 deductible. (*Id.*; Hymas Decl. (Dkt. # 33) ¶¶ 3-5 & Exs. A-C.)

On March 25, 2010, Mr. Mansker filed the present lawsuit, asserting claims for breach of contract, declaratory relief, and injunctive relief. (Compl. ¶¶ 7.1-7.25.) These claims generally arise from Defendants' alleged failure to pay damages for diminished

ORDER- 3

1  value loss.  Mr. Mansker does not provide a specific definition of diminished value loss

2  in his complaint, but contends that diminished value loss is the decrease in fair market

3  value which follows after a vehicle is involved in a collision and repaired.  (*See id*. ¶ 5.1)

4  In briefing the present motions, Mr. Mansker has provided additional information

5  regarding the nature and causes of the diminished value loss he seeks to recover.  First,

6  Mr. Mansker submits the declaration of Kristin L. Wood, Ph.D., in which Dr. Wood

7  states that there exist qualitative differences between a pre-collision vehicle and a post-

8  collision, post-repair vehicle.  (Wood Decl. (Dkt. # 56) ¶ 20.)  As Dr. Wood explains,

9  "[t]hese differences are a result of the loosening of parts (causing vibration, rattles, and

10  other anomalies) and undetectable secondary damage," which are caused by the

11  transmission of kinetic energy through a vehicle during a collision. (*Id*.; *see id*. ¶ 21.)

12  Additionally, Dr. Wood notes that "when vehicles are repaired, it is impractical and

13  infeasible to check weld strengths for structural components and interfaces" and "to

14  validate the position and part dimensions of all vehicle components," thereby preventing

15  any assurance that a vehicle will perform in its pre-collision manner during a second

16  collision.  (*Id*. ¶ 22.)  Finally, Dr. Wood states that common repair practices lead to a

17  "significant likelihood that the repaired structural members on a vehicle will not provide

18  the same structural integrity and energy transmittance as the original members."  (*Id*. ¶¶

19  22-23.)  Second, Mr. Mansker submits his own declaration, in which he recounts that,

20  following the repairs to his vehicle, he has noticed that the vehicle "from time to time

21  'squeaks' when in motion."  (Mansker Decl. (Dkt. # 56) ¶ 6.)  Mr. Mansker had not heard

22  this squeaking noise before the collision and repairs to his vehicle.  (*Id*.)

ORDER- 4

# III.    ANALYSIS

FICO WA and FIE move for summary judgment, arguing that Mr. Mansker's claim for diminished value losses is not covered by the scope of UIM coverage for property damage provided under his policy.  (Mot. at 6-7, 10.)  Mr. Mansker cross-moves for summary judgment on the issue of coverage.  (Resp. (Dkt. # 56) at 5.)  He asserts that the court should construe the language of the Mansker Policy to provide that physical injury to the vehicle operates as a trigger for recovery of all damage that arises as a result thereof, including diminished value loss.  (*Id*.)

## A.    Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.  The non-moving party "must present affirmative evidence to make this showing."  *Id*.

**B.      Insurance Contracts in Washington**

In Washington, insurance policies are construed as contracts. *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).  A court must consider an insurance policy as a whole and give it a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id.* (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000)).  If the language of an insurance policy is clear and unambiguous, the court must enforce the policy as written; a court may not modify it or create ambiguity where none exists. *Id.*

A clause in an insurance policy is ambiguous "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co., Inc.*, 951 P.2d 250, 256 (Wash. 1998).  To resolve ambiguity, courts look to extrinsic evidence regarding the intent of the parties. *Quadrant*, 110 P.3d at 737.  "Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured." *Id.*  The expectations of the insured, however, cannot override the plain language of the insurance policy. *Id.*

**C.      Underinsured Motorist Statute**

Washington's underinsured motorist statute, RCW 48.22.030 ("UIM Statute"), requires UIM coverage to be made available to Washington policyholders.  RCW 48.22.030(2); *Clements v. Travelers Indem. Co.*, 850 P.2d 1298, 1302 (Wash. 1993).  Once UIM coverage is offered, however, the insured may waive it.  RCW 48.22.030(4);

1   *Clements*, 850 P.2d at 1302.  By its terms, the UIM Statute requires that issuers of

2   automobile insurance policies offer UIM coverage

> for the protection of persons insured thereunder who are legally entitled to
> recover damages from owners or operators of underinsured motor vehicles,
> hit-and-run motor vehicles, and phantom vehicles because of bodily injury,
> death, or property damage, resulting therefrom, . . . .

RCW 48.22.030(2).  With respect to UIM coverage for property damage, the UIM Statute

further provides:

> Property damage coverage required under [RCW 48.22.020(2)] shall mean
> physical damage to the insured motor vehicle unless the policy specifically
> provides coverage for the contents thereof or other forms of property
> damage.

RCW 48.22.030(3).

The purpose of the UIM Statute is to protect the innocent victims of automobile

accidents by providing a source of indemnification when the tortfeasor does not provide

adequate protection.  *Fisher v. Allstate Ins. Co.*, 961 P.2d 350, 353 (Wash. 1998); *Kyrkos

v. State Farm Mut. Auto. Ins. Co.*, 852 P.2d 1078, 1081-82 (Wash. 1993); *Blackburn v.

Safeco Ins. Co.*, 794 P.2d 1259, 1262 (Wash. 1990).  As the Washington Supreme Court

teaches, the UIM Statute seeks to allow "an injured party to recover those damages which

the injured party would have received had the responsible party been insured with

liability limits as broad as the injured party's statutorily mandated underinsured motorist

coverage limits." *Blackburn*, 794 P.2d at 1261-62 (quoting *Hamilton v. Farmers Ins.

Co.*, 733 P.2d 213, 216 (Wash. 1987)).

UIM coverage is a creature both of statute and of contract.  That is, "the source of

the obligation to offer UIM coverage is statutory," *Fisher*, 961 P.2d at 352, while the

1   contractual relationship between the insured and the insurer governs the scope of

2   coverage, subject to the minimum coverage requirements set forth in the UIM Statute.

3   *See id.*; *Britton v. Safeco Ins. Co. of Am.*, 707 P.2d. 125, 133 (Wash. 1985); *Liljestrand v.*

4   *State Farm Mut. Auto Ins. Co.*, 734 P.2d 945, 948-49 (Wash. Ct. App. 1987).  In other

5   words, the UIM Statute establishes a floor, but not a ceiling for UIM coverage.  As a

6   consequence, "where the underinsured motorist endorsement does not provide protection

7   to the extent mandated by the underinsured motorist statute, the offending portion of the

8   policy is void and unenforceable."  *Britton*, 707 P.2d at 133.  Nevertheless, where a

9   policyholder contracts with an insurer for UIM coverage, "the court must consider the

10  contractual relationship between the insurer and the insured when deciding UIM issues."

11  *Fisher*, 961 P.2d at 352.

**D.   Washington Case Law**

13       Neither the Washington Supreme Court nor the Washington Court of Appeals has

14  had occasion to consider in depth coverage questions related to diminished values loss in

15  the context of UIM insurance.  At least one Washington Superior Court, however, has

16  addressed coverage questions analogous to those raised by Mr. Mansker, and the

17  Washington Court of Appeals has recently analyzed the recovery of diminished value

18  loss under collision insurance.  These cases offer guidance as the court evaluates the

19  parties' arguments here.

20       1.   Scammell v. Farmers Insurance Exchange

21       In *Scammell v. Farmers Insurance Exchange*, No. 01-2-13321-2 (Wash. Super.

22  Ct.), the Pierce County Superior Court considered the scope of UIM coverage for

ORDER- 8

property damage with policy language identical to the Mansker Policy.[2]  *Scammell*

appears to be the first and only case to rule on the questions raised by Mr. Mansker.

Theodore Scammell, like Mr. Mansker, purchased automobile insurance from FICO WA

which included an endorsement for UIM coverage for property damage.  Mr. Scammell's

1999 Ford Taurus was damaged in a collision and FICO WA paid for repairs to the

vehicle.  After the repairs were complete, Mr. Scammell filed suit in state court to recover

diminished value under his UIM coverage.  The case proceeded to arbitration.  Upon

consideration of Mr. Scammell's motion to confirm the arbitration ruling, the court

denied the motion and took the opportunity to clarify its prior ruling regarding the scope

of the UIM coverage.  (Letter Ruling, filed May 17, 2007 ("*Scammell* Letter Ruling")

(Dkt. # 34-3).)

        The *Scammell* court began its analysis with the UIM Statute, finding that the

Washington Legislature used the term "physical damage" in RCW 48.22.030(3) as a

means to limit the scope of UIM coverage that insurers must offer to policyholders.  (*Id*.

at 3.)  Next, turning to the language of the policy, the court found that the policy was

coextensive with the UIM Statute and that the use of the term "physical" constitutes "an

unambiguous limitation on coverage, requiring the claimant to allege physical injury to

tangible property."  (*Id*.)  Within this framework, the court articulated the relevant

_____

[2] The court grants FICO WA and FIE's request for judicial notice of the materials
submitted regarding *Scammell*.  (Dkt. # 34.)  These materials are proper subjects for judicial
notice as public or quasi-public records involving proceedings in the Washington State Superior
Court and in arbitration.

inquiry: "[O]nce coverage was triggered, was Mr. Scammell entitled to recover only for

physical injury or for all injury."  (*Id.*)  Accepting Mr. Scammell's argument that possible

physical injury to the vehicle might remain, the court remanded the matter to arbitration

with the following clarification of its prior ruling:

> [T]he Court held that the policy provides coverage for diminished value *to the extent that it is physical injury*.  In other words, diminished value is not covered unless Mr. Scammell can prove physical injury remains.  It remains an issue of proof as to whether Mr. Scammell can persuade the trier of fact that physical injury remains to his vehicle even after it has been repaired.
>
> The Arbitrator's Order on Scope of Arbitration incorrectly [interprets] this Court's ruling.  The Arbitrator concludes that so long as there was a rational basis for the post accident market value diminution that such damages would be compensable.  To support this conclusion the Arbitrator analogizes this to the loss of market value when a new car is driven off the lot.  A better analogy to the Court's ruling would be the difference in the value of a car with a dent in the front quarter panel and the same car without the dent.  The value of the dented car is diminished to the extent that it is physical injury.

(*Id.* at 4.)

Following a second arbitration, the matter returned to the *Scammell* court to

consider whether to confirm the second arbitrator's ruling.  In his ruling, the arbitrator

considered evidence of physical injury, physical differences, and diminished value.

(Final Reasoned Ruling and Award, dated Dec. 22, 2008 ("Arbitration Ruling") (Dkt. #

34-5).)  With respect to diminished value, the arbitrator observed:

> It cannot be reasonably disputed that when there are two otherwise identical vehicles, one of which has been in a collision and then repaired, and the other of which has not been in a collision, the fair market value of the repaired vehicle is generally less than the value of the never-damaged vehicle.

1  (*Id*. at 9.)  Even accepting this proposition, however, the arbitrator found that "diminution

2  in value is on its face linked less to any specific and actual continuing physical injury in

3  fact than to the simple fact of a prior accident." (*Id*. at 10.)  Though Mr. Scammell

4  presented testimony to suggest that for every vehicle the post-collision, post-repair

5  diminution in value would be no less than 10 percent of the fair market value the vehicle

6  would otherwise have had, the arbitrator deemed this testimony unreliable and

7  emphasized that Mr. Scammell's argument "reinforces the conclusion that diminished

8  value occurs separate and apart from actual and ongoing physical damage." (*Id*.)

9  Nevertheless, the arbitrator ultimately found the vehicle had sustained a post-collision,

10 post-repair diminished value of $235.  (*Id*. at 11.)  The arbitrator concluded his ruling as

11 follows:

12         If the trial court in this matter should determine that proof of the existence
           of different paint and different parts without proof of ongoing and
13         identifiable cosmetic, structural or functional defect constitutes "physical
           injury" under the policy, then claimant has prevailed in proving
14         compensable diminished value of $235.  If the trial court in this matter
           should determine that "physical injury" requires a greater showing, such as
15         continuing unrepaired dents, bends or stress to the vehicle's structure,
           function or appearance, then claimant has not prevailed in proving
16         diminished value attributable to "physical injury."  The final legal decision
           as to the meaning of the phrase "physical injury" in the insurance policy
17         and, as a result, the prevailing party in this arbitration, is a decision for the
           trial court.
18
   (*Id*. at 11-12.)
19
20        The *Scammell* court ultimately granted FICO WA's motion to confirm the

21 arbitration award, finding that Mr. Scammell had failed to prove "physical injury" to his

22 vehicle within the scope of the court's interpretation of the UIM coverage, and entered

ORDER- 11

1    judgment dismissing Mr. Scammell's claims without recovery of any kind.  (Request for

2    Judicial Not. Ex. F (Dkt. # 34-7) (Order Granting FICO WA's Mot. to Confirm

3    Arbitration Award) & Ex. G (Dkt. # 34-8) (Judg. of Dismissal).)  *Scammell* thus stands

4    for the proposition that diminished value loss is not recoverable under the terms of FICO

5    WA's UIM coverage for property damage where the policyholder has not demonstrated

6    physical injury to the vehicle and, to that end, satisfied a "greater showing, such as

7    continuing unrepaired dents, bends or stress to the vehicle's structure, function or

8    appearance."  (Arbitration Ruling at 12.)

9         2.   Moeller v. Farmers Insurance Company of Washington

10        In *Moeller v. Farmers Insurance Company of Washington*, 229 P.3d 857 (Wash.

11   Ct. App. 2010), *review granted*, 234 P.3d 1172 (Wash. July 6, 2010), the Washington

12   Court of Appeals held that diminished value loss was recoverable under the terms of

13   collision coverage contained in an automobile insurance policy.  229 P.3d at 862.

14   *Moeller* does not address UIM coverage, but it offers insight regarding the treatment of

15   diminished value loss in another context by the Washington Court of Appeals.  The case

16   arose after Farmers Insurance Company ("Farmers") repaired David Moeller's 1996

17   Honda Civic CRX following a collision pursuant to the collision coverage of his policy.

18   *Moeller*, 229 P.3d at 859.  Farmers did not compensate Mr. Moeller for the vehicle's

19   diminished value, and Mr. Moeller filed suit on behalf of himself and others similarly

20   situated, alleging claims for breach of contract, insurance bad faith, failure to disclose

21   under Washington's Consumer Protection Act, and failure to make prompt payment of

22   claim.  *Id.*  The superior court certified a class and then granted Farmers' motion for

ORDER- 12

1   summary judgment, finding that the collision coverage did not provide coverage for

2   diminished value loss.  *Id*.

3        On appeal, the Washington Court of Appeals began its analysis by distinguishing

4   between diminished value loss and stigma damages:

> A vehicle suffers diminished value when it sustains physical damage in an
> accident, but due to the nature of the damage, it cannot be fully restored to
> its pre-loss condition.  The remaining, irreparable physical damage, such as,
> for example, weakened metal which cannot be repaired and which results in
> diminished value.  In contrast, stigma damages occur after the vehicle has
> been fully restored to its pre-loss condition, but it carries an intangible taint
> due to its having been involved in an accident.

9   *Id*. at 861-62.  With these definitions in mind, the court noted that despite the repair of

10  Mr. Moeller's vehicle, "there remains damage that cannot be repaired, e.g., weakened

11  metal," and Farmers had not paid for this diminished value loss.  *Id*. at 862.  The policy

12  language of the collision coverage in *Moeller* stated that Farmers "will pay for loss to

13  your Insured car caused by collision less any applicable deductibles."  *Id*. at 861.  The

14  policy defined "loss" as the "direct and accidental loss of or damage to your Insured car,

15  including its equipment," defined "accident" as "a sudden event . . . resulting in . . .

16  property damage neither expected nor intended by the Insured person," and defined

17  "property damage" as "physical injury to or destruction of tangible property, including

18  loss of its use."  *Id*. at 861-62.  The court concluded that the policy language

19  encompassed diminished value:

> [T]he policy covers diminished value.  "[D]irect" losses include those
> proximately caused by the initial harm.  A collision begins a chain of events
> that sometimes results in a tangible, physical injury that cannot be fully
> repaired.  Absent an intervening cause, diminished value is a loss
> proximately caused by the collision and thus is covered.  As Moeller

argues, "[B]ecause it is indisputable that there was physical injury to [his] vehicle[ ], any and all damages flowing therefrom, and not expressly excluded by the policy, are clearly covered."

*Id*. at 862 (citations omitted). *Moeller* announces that, at least under some policies, diminished value loss is recoverable following a collision.[3]

**E.    Diminished Value Loss Under the Mansker Policy**

1. Definitions

The court begins its analysis by adopting the definitions of stigma damages and diminished value loss set forth in *Moeller*. *See Moeller*, 229 P.3d at 861. One of the difficulties inherent to the present dispute is that the parties have not agreed on a common vocabulary and, as a result, often speak past each other. FICO WA and FIE contend that Mr. Mansker seeks to recover for "metaphysical" or "non-physical" injury to his vehicle. In response, Mr. Mansker characterizes his claim for recovery as premised on residual physical damage to his vehicle that either cannot be or has not been fully repaired.    It is clear, however, that Mr. Mansker seeks to recover for all damages that flow from physical injury, which potentially includes both diminished value loss and stigma

---

[3] The Washington Supreme Court has accepted review in *Moeller*, which suggests that the court will likely address the question of diminished value loss in the context of collision coverage in the near future. Though the Washington Supreme Court may adopt a different approach than the Washington Court of Appeals, this court declines to discount *Moeller* at this time as it provides one of the few decisions on diminished value loss in Washington. The court likewise declines to ignore *Moeller* as "inapposite" as argued by FICO WA and FIE. (Mot. at 15 n.6; Reply (Dkt. # 57) at 13 n.3.) FICO WA and FIE correctly point out that *Moeller* addresses a coverage question different than the coverage question presented here, but this does not mean that *Moeller* offers no guidance.

damages as defined in *Moeller*.[4]  (Resp. at 2, 7, 22.)  In many instances, there may not be a bright line distinction between diminished value loss and stigma damages, as the two categories bleed into each other where the residual physical damage to a vehicle is minimal.  The court will use *Moeller*'s definition of diminished value loss and will distinguish between diminished value loss (irreparable physical damage) and stigma damages (intangible taint) in this order, but does so with the understanding that the definition of diminished value loss requires *demonstrable* physical damage.

### 2.  The UIM Statute

The court next considers the breadth of coverage mandated under the UIM Statute. The UIM Statute establishes that coverage must be offered to policyholders "who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . . because of . . . property damage[.]"  RCW 48.22.030(2).  Mr. Mansker argues that the UIM Statute requires insurers to offer UIM coverage for property damage which extends to all damages which flow from or are triggered by physical damage to the vehicle.  (Resp. at 15.)  Mr. Mansker understands physical damage to operate as a trigger for recovery of intangible damages such as loss of market value flowing directly from the physical damage to the vehicle.  (*Id*. at 15-17)  The language of RCW 48.22.030(2), standing alone, lends support to Mr. Mansker's trigger argument.

---

[4] For his part, Mr. Mansker states: "Diminished value is 'the reduction in a vehicle's market value occurring after a vehicle is wrecked and repaired.  A reasonable person will not pay the same price for a wrecked, then repaired vehicle, as they will for a vehicle with no prior accident history.'  This residual physical damage, the inability to restore the vehicle to its pre-loss condition, gives rise to the 'diminished value' that Plaintiff and the Class seek to recover in this action."  (Resp. at 2 (quoting Wikipedia Online Dictionary).)  Mr. Mansker also quotes *Moeller*'s definition of diminished value.  (*Id*. at 2 n.1.)

1       Nevertheless, the UIM Statute also provides that "[p]roperty damage coverage

2   required under [RCW 48.22.030(2)] shall mean physical damage to the insured motor

3   vehicle unless the policy specifically provides coverage for the contents thereof or other

4   forms of property damage."  RCW 48.22.030(3).  This language operates to limit the

5   scope of UIM coverage for property damage required under RCW 48.22.030(2) by

6   imposing a "physical" damage requirement.  (*See Scammell* Letter Ruling at 3.)  The

7   parties disagree, however, as to the precise effect of this limitation.  On the one hand,

8   FICO WA and FIE argue that RCW 48.22.030(3) demonstrates that the Legislature

9   "chose not to require insurers to offer coverage for anything other than physical damage

10  to the insured car."  (Mot. at 11; Reply at 8-10.)  On the other hand, Mr. Mansker

11  contends that RCW 48.22.030(3) merely requires physical damage as a prerequisite to

12  recovery for all property damage that he would be legally entitled to recover.  (Resp. at

13  15.)

14      Having reviewed the UIM Statute and considered the arguments of the parties, the

15  court holds that RCW 48.22.030(3) limits the scope of UIM coverage for property

16  damage required to be offered under RCW 48.22.030(2) to coverage for physical damage

17  to the vehicle.  By its terms, RCW 48.22.030(3) expressly addresses "property damage

18  *coverage*," and, in so doing, indicates that its concern is with the scope of UIM coverage

19  for property damage rather than with a physical damage trigger.  Mr. Mansker reads

20  RCW 48.22.030(3) as if it merely defined the term "property damage" as used in RCW

21  48.22.030(2).  Such a reading, however, discounts the statute's reference to "coverage."

22  Furthermore, RCW 48.22.030(3) refers to the possibility of the parties contracting for

1    additional coverage not mandated by the UIM Statute, either for the contents of the

2    vehicle or other forms of property damage.  This language cuts against Mr. Mansker's

3    argument that physical damage operates as a trigger for broader recovery because such

4    additional coverage for other forms of property damage would presumably arise due to

5    physical damage to the vehicle in most instances and thus, under Mr. Mansker's

6    interpretation, would already be covered.

7          The *Scammell* court reached the same conclusion regarding the scope of UIM

8    coverage for property damage mandated under the UIM Statute.  (*Scammell* Letter Ruling

9    at 3); *see also Reger v. State Farm Mut. Auto Ins. Co.*, 119 Wash. App. 1041, 2003 WL

10   22885141, at *2 (Wash. Ct. App. Dec. 8, 2003) (unpublished).[5]  In its ruling, the court

11   focused on the Washington Legislature's use of the term "physical damage" as a

12   limitation on the mandated scope of UIM coverage for property damage.  (*Scammell*

13   Letter Ruling at 3.)  Comparing RCW 48.22.030(3) to the policy at issue, the *Scammell*

14   court found that the policy was "coextensive" with the UIM Statute and, in turn,

15   concluded that the policy provided coverage "for diminished value *to the extent that it is*

16   *physical injury*."  (*Id.* at 3-4.)

17         The court is not persuaded by Mr. Mansker's argument that the common law as it

18   existed prior to the enactment of the UIM Statute governs the present analysis.  (Resp. at

19   12-17.)  Mr. Mansker argues that "RCW 48.22.030 contains no expression of Legislative

20

21         [5] In *Reger*, the Washington Court of Appeals stated:  "The clear meaning of the [UIM]
     statute is that a UIM insurer is entitled to limit UIM coverage to property damage for the
     physical damage to the insured motor vehicle . . . ."  2003 WL 2285141, at *2.  *Reger* holds no
22   precedential weight, however, and the court declines to discuss it further.

1  intent to abolish or change the remedies available to owners of property that has been

2  damaged by an uninsured motorist" and contends that, without such an expression, the

3  common law prevails.  (*Id*. at 14-15.)  As discussed above, however, the court finds that

4  the UIM Statute limits the mandated scope of UIM coverage for property damage.

5          The court also finds that other Washington case law does not require a different

6  result.  In *Heaphy v. State Farm Mutual Automobile Insurance Company*, 72 P.3d 220

7  (Wash. Ct. App. 2003), an insured made a claim for diminished value loss under her UIM

8  coverage for property damage.[6]  *Heaphy*, 72 P.3d at 222.  The insurer conceded that

9  diminished value loss was covered under the policy, and therefore the court had no

10  occasion to analyze RCW 48.22.030(3) or the recovery of diminished value loss

11  generally.  *Id*. at 223.  Similarly, case law interpreting the scope of UIM coverage for

12  bodily injury under the UIM Statute is distinguishable.   RCW 48.22.030(3) limits the

13  scope of "property damage coverage," but does not impose an analogous limitation

14  regarding UIM coverage for "bodily injury" or "death."   To the extent Washington courts

15  have allowed recovery for emotional injuries accompanied by physical manifestations

16  under the scope of UIM coverage for bodily injury, the court views these cases as resting

17  on a different statutory foundation.  *See, e.g., Trinh v. Allstate Ins. Co.*, 37 P.3d 1259,

18  1264 (Wash. Ct. App. 2002) (concluding that physically-manifested PTSD falls within

19  the scope of bodily injury); *see also Daley v. Allstate Ins. Co.*, 958 P.2d 990, 998 (Wash.

20

21          [6] In *Heaphy*, the insurance policy stated that the insurer "will pay damages for property
    damage an insured is legally entitled to collect from the owner or driver of an underinsured
22  motor vehicle.  The property damage must be caused by [an] accident arising out of the
    operation, maintenance or use of an underinsured motor vehicle."  *Heaphy*, 72 P.3d at 222.

1   1998) (holding that emotional distress damages unrelated to an insured's physical injury

2   were not recoverable under UIM coverage for bodily injury).

3       3.  The Mansker Policy

4       Finally, the court addresses the terms of the UIM coverage for property damage

5   contained in the Mansker Policy.  Regardless of the mandated scope of coverage under

6   the UIM Statute, the parties were free to contract for a broader scope of coverage.  The

7   Mansker Policy states that FICO WA "will pay damages for property damage which an

8   insured person is legally entitled to recover from the owner or operator of an

9   underinsured vehicle," and specifies that:

10          As used in this endorsement, property damage means physical injury or
            destruction of: 1) your insured car or 2) property contained in your insured
11          car which is owned by an insured person.

12  (Mansker Policy at 22.)  The Mansker Policy defines the term "damages" as "the cost of

13  compensating those who suffer bodily injury or property damage from an accident."  (*Id.*

14  at 9.)

15      Having reviewed the policy language and the arguments of the parties, the court

16  concludes that the Mansker Policy covers diminished value loss, but does not cover

17  stigma damages.  The policy states that FICO WA will pay damages "for" property

18  damage rather than damages because of or caused by property damage.  This word choice

19  limits the scope of coverage.  *See Shin v. Esurance Ins. Co.*, No. C8-5626 RBL, 2009 WL

20  688586 (W.D. Wash. Mar. 13, 2009).  The policy also imposes an unambiguous

21

22

1   "physical injury" limitation on the term property damage.[7]  (*See Scammell* Letter Ruling

2   at 3); *see also Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 724 P.2d 418, 421 (Wash.

3   Ct. App. 1986).  The court finds that this policy language, taken together and given its

4   ordinary meaning, limits recovery to the cost of compensating for physical injury to the

5   vehicle rather than for all damages that potentially arise from physical injury.  (*See*

6   *Scammell* Letter Ruling at 4); *see also Reger*, 2003 WL 22885141, at *2.  The court

7   agrees with *Scammell* that the policy "provides coverage for diminished value *to the*

8   *extent that it is physical injury*."  (*Id*.)  Stigma damages are not recoverable under the

9   Mansker Policy because they are not physical injury to the vehicle.  Diminished value

10  loss, by contrast, does fall within the scope of coverage because such loss constitutes

11  irreparable physical injury.[8]

12      The court is not persuaded by Mr. Mansker's argument that FICO WA's payment

13  of fair market value when a vehicle is destroyed requires payment of stigma damages

14  when a vehicle sustains only a partial loss.  (Resp. at 18.)  FICO WA concedes that it

15  pays fair market value upon a total loss, but apparently pays only for repair costs upon a

16  _____

17  [7] The policy refers to "physical injury" instead of "physical damage," as used in the UIM
    Statute.  Mr. Mansker contends that this difference is significant, but does not explain how so.
18  (Resp. at 19 n.9.)  Without more, the court finds the difference inconsequential for present
    purposes.

19  [8] The court observes that although the Mansker Policy permits recovery for diminished
    value loss, it does not follow that Mr. Mansker will necessarily be able to recover.  In its
20  analysis, the *Scammell* court emphasized that diminished value loss is not recoverable unless the
    insured can prove that physical injury to the vehicle remains.  (*Scammell* Letter Ruling at 4.)
21  This court need not reach the issue here.  However, the term "physical injury" cannot be
    stretched so far beyond its core meaning as to include, in effect, stigma damages by another
22  name.

ORDER- 20

1  partial loss.  Mr. Mansker contends that, absent a distinction in the policy language, the

2  court must assume that the measure of damages intended is the same for partial losses as

3  for total losses, *i.e.*, fair market value.  FICO WA and FIE respond that, contrary to Mr.

4  Mansker's characterization, the payment of fair market value when a vehicle is destroyed

5  does not compensate the insured for non-physical damage, such as stigma loss, but rather

6  compensates the insured for the physical injury to the vehicle.  (Resp. at 7.)  On this

7  record, the court is satisfied that FICO WA's payment of fair market value on a total loss

8  constitutes payment of damages for property damage, as defined as physical injury to the

9  vehicle, in accordance with the policy language.  To the extent the parties dispute the

10  appropriate measure of damages for property damage covered by the policy, the court

11  declines to resolve the issue here.

12        In conclusion, the court construes the Mansker Policy to provide coverage for

13  diminished value loss to the extent such property damage constitutes physical injury to

14  the vehicle.  On the present record, the court declines to delineate further which types of

15  property damage Mr. Mansker may recover for under his policy.

16                              **IV.    CONCLUSION**

17        In light of the foregoing, the court GRANTS in part and DENIES in part FICO

18  WA and FIE's motion for summary judgment (Dkt. # 31) and GRANTS in part and

19

20

21

22

ORDER- 21

1    DENIES in part Mr. Mansker's cross-motion for summary judgment (Dkt. # 56).

2          Dated this 13th day of September, 2010.

3

4          _____

5          JAMES L. ROBART
           United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 22